## QUESTIONS GROWING OUT OF A RAILWAY CROSSING ACCIDENT.

[Circuit Court of Huron County.]

WHEELING & LAKE ERIE RAILWAY v. PARKER, ADMINISTRATOR.

Decided, 1906.

*Negligence—Accident at a Grade Crossing—View Obstructed by Cars— Evidence as to of Decedent on Former Occasions—Evidence as to Earning Capacity, Nature of Injuries, Speed of the Locomotive, Failure to Look and Listen—Conduct of Decedent after Getting upon the Track—Qualifications of Jurors—Allowance of Peremptory Challenges after Waiver of Right—Custom and Usage—Private Records—Experiments in Presence of Jury out of Court—Crossing Signals—Charge of Court—Words and Phrases.*

1. Mistaken ideas of a juror as to the effect of contributory negligence upon the liability of a defendant railway company, do not disqualify him from serving as a juror if he evinces an intention, when the true rule is stated to him, of regarding it in rendering his verdict.

2. The temporary passing of the jury and waiver of the right to peremptory challenges by counsel for a plaintiff, does not deprive him of the right of exercising such challenges after challenges for cause by the defendant, provided no injustice will result to the defendant.

3. In an action for damages on account of the striking of the decedent by a locomotive at a grade crossing, testimony is competent as to the presence of a side-track with cars standing upon it, which to some degree obstructed the view of the decedent as he approached the crossing; and records of the railroad company showing the presence of such cars is competent, although not produced by the party who made the records.

4. Evidence that the decedent was familiar with the crossing is competent, but evidence tending to show that he was guilty of negligence at the same crossing on previous occasions is incompetent.

5. The fact that the home of the decedent was mortgaged is incompetent where offered in derogation of his earning capacity; the value of his business as a fire insurance agent is competent, as is also testimony by his wife as to his affability and other personal characteristics of assistance to him in securing business.

6. Evidence by physicians as to the nature of the injuries inflicted is competent in so far as it may tend to show the speed of the loco-

motive, but is not competent for the purpose of exciting sympathy or inflaming the minds of the jury.

7. Whether running a locomotive at a given rate of speed across a street in a populous locality is negligence is a question for the jury under the evidence as to the circumstances surrounding the case; and so also the question of proper care in the matter of looking and listening on the part of one crossing a railway track at grade.

8. The statutory requirement as to signals at a crossing is not exclusive, but failure to use ordinary care in the matter of warning signals renders the company liable, as does also failure on the part of the engineer and fireman to use ordinary care in keeping a lookout.

9. The refusal of the court to allow an experiment to be made outside of the court in the presence of the jury, but without the consent of both parties, is not error.

*A. V. Andrews* and *W. R. Pruner,* for defendant in error:

As to the duty of a railroad company to maintain a flagman or gates and a gateman at a crossing at grade in a populous locality. *Clev., C., C. & I. Ry.* v. *Schneider,* 45 Ohio St., 678; *Pennsylvania Ry.* v. *Matthews,* 36 N. J Law, 531; *New York, C. & St. L. Ry.* v. *Swartout,* 14 C. C., 582.

Not contributory negligence to approach a railway crossing in a city with a horse at a trot. *Clev., C., C. & I. Ry.* v. *Schneider,* 45 Ohio St., 678; *Cleveland, C. & I. Ry.* v. *Reiss,* 13 C. C., 405; *Balt. & O. Ry.* v. *Whitacre,* 35 Ohio St., 627.

Duty of one about to pass over a railroad crossing at grade to use his faculties for the purpose of avoiding danger. *Clev., C. & C. Ry.* v. *Crawford,* 24 Ohio St., 631; *Clev., C., C. & I. Ry.* v. *Elliott,* 28 Ohio St., 340; *Pennsylvania Co.* v. *Rathgeb,* 32 Ohio St., 66; *Balt. & O. Ry.* v. *Whitacre,* 35 Ohio St., 627; *Cleve. Term. & Val. Ry.* v. *Heiman,* 16. C. C., 487; *Lake Shore & M. S. Ry.* v. *Schade,* 15 C. C., 424; *New York, C. & St. L. Ry.* v. *Swartout,* 14 C. C., 582.

Plaintiff in an action for damages sustained at a railway crossing need not show that he stopped, looked and listened, in order to free him from contributory negligence. *Balt. & O. Ry.* v. *Van Horn,* 21 C. C., 327; *Pennsylvania Co.* v. *Morel,* 40 Ohio St., 338; *Clev., C., C. & I. Ry.* v. *Schneider,* 45 Ohio St., 678; *Schweinfurth* v. *Railway,* 60 Ohio St., 215.

More than compliance with statutory requirements may be necessary to avoid liability. Elliott, Railroads, Sections 1114, 1155, 1156, 1157, 1158, 1159; *Clev., C., C. & I. Ry.* v. *Schneider*, 45 Ohio St., 678; *Baker* v. *Pendergast*, 32 Ohio St., 494; *Grand Trunk Ry.* v. *Ives*, 144 U. S., 408 (12 Sup. Ct. Rep., 679; 38 L. Ed., 485).

Speed of trains at crossings. Elliott, Railroads, Sections 1160, 1161; *Clev., C., C. & I. Ry.* v. *Schneider*, 45 Ohio St., 678.

Opinions of non-professionals as to the rate of speed of a train. *Balt. & O. Ry.* v. *Stoltz*, 18 C. C., 93; *Balt. & O. Ry.* v. *Schultz*, 43 Ohio St., 270; *Shelby (Vil.)* v. *Clagett*, 46 Ohio St., 549; *Clev., C. & C. Ry.* v. *Crawford*, 24 Ohio St., 631; *Balt. & O. Ry.* v. *Van Horn*, 21 C. C., 337.

WILDMAN, J.; HAYNES, J., and PARKER, J., concur.

Error to Huron Common Pleas Court.

The case of the Wheeling & Lake Erie Railroad Company against George C. Parker, administrator of the estate of Samuel F. Newman, deceased, is one in which a most marked feature is the voluminous record. It is very apparent that this case was hotly contested by the company and zealously pressed by the plaintiff.

There are a large number of exceptions, amounting in all to 265. We have gone over them and have examined everything in the record connected with them so as to satisfy ourselves as to what the result was or should have been, but I will touch only on some of the more important points.

It appears that on October 2, 1903, Mr. Newman was struck by a passing locomotive belonging to the defendant below, the Wheeling & Lake Erie Railroad Company, now the plaintiff in error, and that he was so injured that he died a few hours later at his home.

His administrator, claims that his death was caused by the negligence of the defendant company without fault on his part. Mr. Newman at the time of this tragic occurrence was seventy-six years old; a man, as the evidence discloses, of more than the usual activity and vigor of men of those advanced

years, although he had become quite seriously impaired in his hearing.

The claims of the plaintiff as to the negligence of the defendant are disputed by the defendant below, and it in turn asserts that the negligence, if there was any, was that of the decedent in attempting to cross the track of the defendant company when he knew, or, in the exercise of ordinary care, should have known of the approach of the locomotive which caused his death. There is no question made by counsel for the company that the accident, if we call it such, was the direct cause of the death, and indeed no question could justly be made upon the evidence in this record.

There is conflicting evidence as to whether proper signals were given as the engine approached the crossing. The crossing is that of Benedict avenue in the city of Norwalk at a point where the track was to a considerable extent hidden by buildings, and, as claimed by the plaintiff below, by some cars or rolling stock stationed upon the switch immediately north of the track on which the locomotive which caused the death was approaching.

The grounds of negligence asserted by the plaintiff below, which it is urged warranted the recovery of a verdict in favor of the administrator for $5,000 damage, are, that the engine which had previously gone in an easterly direction and was at the time backing westerly towards this crossing, the tender being in front of the locomotive, had no proper lookout upon or about the tender to reveal the close approach of any person to the track, or the fact that any person was upon the track, in time to enable the employe in charge, the engineer, to check its course to avoid peril to the person crossing; that there were no closed gates at the time of the accident to stop persons traveling upon the highway from crossing the track; that there were no sufficient lights on the advancing part of the locomotive—that is, the end of the tender which was in advance— so as to make the approach of the locomotive plainly visible to persons about to cross the track; and also that the engine was running at an excessive rate of speed and that the engineer in charge of it was not keeping it under sufficient control. I

think that these are all of the claimed grounds of negligence as against the company.

Numerous errors have been asserted by the defendant below, to have occurred during the progress of the trial, some of which follow.

At the very outset of the trial, questions were raised upon the impanneling of the jury and certain challenges were made by the defendant below to persons called as jurors, which challenges were overruled by the court and exceptions were taken. It appears also that at one stage of this procedure the plaintiff below announced his intention of passing the jury so far as apparent peremptory challenges were concerned. He said that he simply waived the challenge for the time; but however that may be, the court subsequently permitted him to exercise the right to peremptory challenge after perhaps challenges for cause had been made by the defendant below.

We have examined the record very carefully in this regard, and we find that the persons who were considered objectionable by the defendant below, and whom he asked to have excluded from the jury, possessed more than the average understanding of the required duties of jurors.

It is true that some ignorance of what would be the proper rule as to liability was shown by one of them in his answers to questions put to him by counsel for defendant below. Without attempting to state the precise form in which these questions arose in the record, it is substantially this:

Mr. Young, counsel for defendant below, asked the juror whether, if he found that both parties were negligent—both decedent and the defendant company—he would render a verdict for the defendant below, even if the negligence of both contributed to the injury, and the juror at first replied in substance that in such case he should think that the plaintiff ought to have something, but the amount that he should have, should be determined by the amount of the negligence of both; but upon being instructed by the court as to what would be the true rule, or rather when the hypothetical question was put to him by the court as to what would be his course, if he should be instructed by the court as to the true rule in this

state as to contributory negligence, the witness at once showed a disposition to abide by the rule of law which should be given by the court and no disposition in the slightest degree to assert his own notion as against the law. We think in this instance as in the other, that the juror showed intelligence and appreciation of his duties and the court properly admitted him. We think that there was nothing to justify the court in rejecting these jurors for anything that appears upon the record.

The fact, that counsel for plaintiff, temporarily passing the jury, waived any right of peremptory challenges for the time, we think did not deprive the court of the power to permit the exercise of peremptory challenges later, provided no injustice were done to the opposite party; and there is nothing in this case to indicate to our minds that any injustice was done. We think there was no error or abuse of discretion in the impanneling of the jury.

The defendant below claims that the court erred in permitting evidence offered on behalf of the plaintiff below, especially as to the custom of the company in leaving cars upon the the switch to which I have referred—a switch next to and along the shed owned by the lumber company, between this shed and the track along which the locomotive passed upon the occasion in question. This evidence was not exactly in the form of a custom; it was rather evidence as to the nature of this track, what it was used for, and it was coupled with some other evidence indicating that upon the occasion in question, on October 2, 1903, there were cars which may have obstructed the view of Mr. Newman in his approach to the track where he received his fatal injury.

Our judgment is, that, coupled with the other evidence that was offered showing the probability that cars were placed upon the track on this occasion, it was entirely proper to show that that was a switch track, or a track for the placing of cars loaded with lumber which might be consigned to this lumber company, and placed there for the purpose of receiving lumber for shipment.

Another question of claimed error is raised upon the admitting of evidence connected with this same point, the use

of this track and the probability that it was occupied, as I have said, on the night in question.   Certain records of the company were permitted to be used to show this fact, and it is claimed that this was error.   The official of the company whose duty it was to keep these records, making the entries, was not called as a witness; the record was shown by the person in whose custody they were, but not the person who had kept them, and it is claimed that this was error.   This might be urged with much more force if the record had been offered in behalf of the company, if it had been claimed that it was an item of documentary or record evidence, which had been made by the company for the preservation of the history of a fact which could not otherwise conveniently be shown, just as a book of original entries may be offered by a tradesman in his own behalf, upon his showing that it was kept in a proper manner, and just as has been permitted to be shown in the two cases which counsel have in memory, *Moots* v. *State*, 21 Ohio St., 653, and *Shriedley* v. *State*, 23 Ohio St., 131.   The difference, however, between those cases and this is involved in the fact this this evidence was offered, not in behalf of the company which caused the record to be kept, but in behalf of the opposite party as an admission of record by the defendant company, and it made very little difference as to who had kept it, if it was one of its records upon which it relied, and which it used in its business, and was in the custody of the official who produced it or whose attention was called to it in court. We think that it was properly admitted.

The plaintiff in error complains that evidence was permitted of some of Mr. Newman's characteristics—his good nature and affability and such matters as that—and especially that it involved the testimony of his wife along this line.   We do not think, if the evidence is competent, that any proper objection can be taken to his wife's testifying as to his habitual characteristics.   She is just as competent upon such matters as is any other witness, while she would not be a competent witness to testify to transactions between herself and her husband when no other witnesses were present.   But this is a trait of her husband which might be evinced to her, not only

in their communication with each other, but also a.id more especially in the form in which it was called for in the question here, in his dealings with other people; because that was the question substantially that was asked of her—what were his characteristics in his relation to other people, not in his relation to her; and we think the testimony was competent as drawn from other witnesses and also from her. Most of it is in its relation to the business in which he was engaged.

He was an insurance agent and all business people know—all intelligent observers know—that in the business of soliciting insurance, the possession of affability and good address are important characteristics, adding greatly to the earning capacity of the man so engaged. We find no error in the admission of this testimony.

On the other hand, it is said that the court improperly excluded testimony tending to show that Mr. Newman was habitually negligent in approaching this crossing. The court did reject such testimony, and we think properly, although the attorney offering the evidence said he offered it for the purpose of showing Mr. Newman's familiarity with the crossing.

In the case of *Balt. & O. Ry.* v. *Van Horn*, 21 C. C., 337, decided by the Licking circuit court, the judge announcing the opinion, says:

"It is true that if it was offered to show that Van Horn had repeatedly crossed the railway at that point, that would be competent to show his familiarity with the crossing. As is said in *Brewing Co.* v. *Bauer*, 50 Ohio St., 560, it is competent to show his familiarity with the crossing, and if that involved the idea of other acts of negligence on his part, it would be the duty of the trial judge to caution the jury that that evidence was competent only for the purpose of showing familiarity with the crossing, and not to show other acts of negligence. But the offer in this case was not for the purpose of showing his familiarity with the crossing—the fact that he knew that there was a railroad crossing there, and knew the situation and surroundings; but it was offered for the purpose of showing that,. on some other occasion he had had a narrow escape before the train; in substance that Van Horn was habitually negligent, or that at other times and at that place he had been guilty of

negligence.   We think that that evidence, offered for that pur-
pose, is clearly incompetent.   It brings before the jury an en-
tirely collateral issue.''

I shall not dwell longer upon the language of the judge in
further elaboration of his opinion, which is unquestionably well
founded and in accordance with the rule of law, that you can
not prove one act of negligence by showing others; you can
not show that Mr. Newman was negligent upon this occasion
by proving negligence on other occasions.   It may have been
an especial cause for his exercising the very highest degree
of care upon this occasion; in other words, it is the kind of a
thing which might lead a man to be careful, that he had had
narrow escapes at other times.   However, if the court was in
error in not permitting it—we do not think the court was—
we think that no prejudice resulted, because there can be no
question, under all the circumstances of this case of Mr. New-
man's familiarity with this crossing.   It was not a disputed
matter in the case.   He lived upon this street, and he was accus-
tomed to cross the railroad track at this point very frequently;
he was accustomed to drive across it, and the jury could have
come to no other conclusion than that he was altogether familiar
with the crossing and with the dangers incident to passing over
the track.

The defendant below offered, among other items of evidence,
to show that the property of Mr. Newman was mortgaged.   This
is upon the question of his ability to save or earn money and to
provide for his family and accumulate an estate.

We think the testimony was properly rejected by the court
for the reason that it is not the best evidence of a man's earning
capacity.   There is more direct evidence, and it is not an un-
familiar fact that many people permit mortgages to be and
remain upon their property for the very purpose of .enabling
them to accumulate an estate.   Sometimes they believe they
can earn more with the money which has been obtained by the
°placing of an incumbrance upon their property, than they
lose by the payment of interest upon the debt.   All of us have
in mind manufacturing industries that do a large part of their

business upon borrowed capital. Their annual income from
the profits of sales may be very much enhanced by reason of
the larger capital which they obtained by borrowing, and it may
entirely justify the carrying of an indebtedness for many'
years with annual payment of interest upon it. But at any
rate, even if this were not so, whatever Mr. Newman was able
to earn, in so far as that the money would go to the extinguish-
ing of a mortgage, or to the making of proviion for his wife
and children, might naturally be inferred or be believed to
go to the enhancing of their interest in his estate. If he could
eventually have earned enough to extinguish an incumbrance
upon the property, his estate would be enlarged to that ex-
tent. If the mortgage was to remain upon his property, what
he could earn would go to make provision for the maintenance
of the family. So we do not see that the existence of an in-
cumbrance upon the property had any legitimate bearing upon
the question as to what he was able each year to earn.

It is urged by counsel for plaintiff in error that an improper
element of evidence was admitted into the case in showing the
value of his business as an insurance agent, instead of showing
his earning capacity. We think his earning capacity was shown.
His business of fire insurance was not quite like the business
of a life insurance agent, where there is some understanding
between he agent and his company that he is to receive a part
of the annual premium which may be collected by some other
agent after he goes out of the employment of the company.
It is not like that; but the value of the business here is simply
his own good will—his personal good will; it is that which
he may be able to maintain if he lives and which is at once
cut off if he dies, growing out of his affability, growing out
of his capacity for business and his knowledge of insurance,
and the clientage he has built up. It is a matter of good will,
as I say, and it may properly be taken into consideration in
estimating damages under the circumstances developed here.

The answer admits that the death was caused by the injury,
and it is said in behalf of the plaintiff in error that the court
permitted evidence of doctors tending to excite the imagina-
tion of jurors, and consequently their sympathies and possibly

their prejudice, which testimony more specifically was that of doctors describing the extent of the injury directly caused by the striking of Mr. Newman by the locomotive.

We think that the jury could hardly have been influenced in the direction suggested by this evidence. So much is involved in the knowledge that the death was caused by the violence of the collision and the extent of the injury, that scarcely anything could be added to that; I mean in the way of awakening sympathy—sympathy with those who had suffered; with the wife and children; or sympathy because of any thought about his own pain, or prejudice against the company because of any assumption that the injury was caused by the company's negligence. We hardly see how the jury could have been influenced in the particular direction claimed by counsel. The evidence did have a bearing in another direction, and was properly received by the court, although it may have had but a very slight bearing.

Some question was raised as to the speed of the locomotive. It was one of the complaints of the plaintiff below that the locomotive was running at an excessive speed, and as bearing upon that, it was competent to show the violence with which Mr. Newman was struck, how far he was thrown and in what direction, etc.; and in that immediate connection, the extent of the bruises or the mangling of the body or anything of that sort, as bearing upon that question, of the speed of the locomotive. As I have said, it may have had a little bearing; but if it had any at all, it was proper to be received by the court. If Mr. Newman had been simply pushed down by the locomotive, running at the speed at which a man might walk, and had thereby been injured and had died, it would have presented an entirely different phase so far as this aspect of the controversy is concerned.

Criticism is made of various special instructions given by the court and to some of them I will briefly refer. On page 775 of the record is recited the twenty-third instruction given at the request of the plaintiff below, which reads as follows:

"Whether a given rate of speed in operating a locomotive across a street in a populous city is negligence, is not in such

a case as this a matter of law, but is a question of fact to be determined by you from the evidence, including all the circumstances and surroundings as shown by the evidence, but under the instructions of the court."

We are unable to see any error in this. The fifteenth request on page 774 reads as follows:

"If you find from the evidence that the defendant on the occasion in question failed to give such signals by bell or whistle or both as ordinary care required in approaching Benedict avenue with its engine, such failure would be negligence."

I believe counsel argued orally that the company was held only to what the statute requires as to the giving of signals by bell and whistle. We think that the statutory rule may be not the only rule; that it does not destroy the general rule, that the company is held to the exercise of ordinary care.

The plaintiff below asked the court to instruct the jury and the court did, over the objection of the defendant:

"Unless he had knowledge to the contrary or in the exercise of ordinary care, would have had such knowledge, Samuel F. Newman had the right to assume that if an engine of the defendant was approaching said crossing at the time in question, it would be handled and operated with ordinary care, and would not be run at a negligently high rate of speed."

The criticism upon this made by counsel for defendant below is, that the word "should" ought to have been used in the first part of the instruction rather than the word "would"; in other words, that it would have been correct to say that "unless he had knowledge to the contrary, or in the exercise of ordinary care 'should have had' such knowledge," he might assume so and so.

We think that in this particular instance the word "would" is just as proper as the word "should." There are many cases where it is proper to say that, in the exercise of ordinary care, he would have had such knowledge; as much as to say that if he had exercised ordinary care, he would have had it. It is precisely the same as to say that he should have obtained it by the exercise of ordinary care.

Now, when the court says that unless he had knowledge to the contrary, or in the exercise of ordinary care would have had such knowledge—that is to say, would have obtained it by the exercise of ordinary care—he is stating the proposition, we think, correctly. It would have been equally proper to use the language suggested by counsel. We think there was no error in giving the instruction as it was given.

The eighteenth instruction objected to, is as follows:

"If you find from the evidence that the engineer and fireman or either of them failed to maintain such a lookout toward the west as ordinary care required, while said engine was approaching said Benedict avenue at the time in question, and then managed and operated said engine without that caution and care which in the exercise of ordinary care should have been observed, and that Samuel F. Newman was injured because of said facts, you will be authorized to infer negligence on the part of the defendant as one of the facts established in the case."

It is said that the fireman had other duties; that he was not required at all times to keep a lookout. That may be true and the court does not say otherwise; the court simply says, "If * * * the engineer and fireman * * * failed to maintain such a lookout * * * as ordinary care required." It is not saying that ordinary care required them to keep a constant lookout.

In the case before us, and under the undisputed circumstances, it would seem as if the court might perhaps properly have said that as they approached this crossing, where the view of the track was obstructed as it was obstructed, considering the rate of speed at which the engine was running, and in view of the fact that it was down grade so that the fireman would not be engaged at the time necessarily replenishing the furnace with fuel, there was no reason why he could not be keeping a lookout along the track. The instruction given does not say he was obliged to keep a lookout up Benedict avenue; it is not hinting at that; it is not saying that he should have seen Mr. Newman when he came under the electric light; the court is saying nothing of that kind; but the court is simply saying

that if they omitted to keep that sort of a lookout, which ordinary care required in the discharge of their duties, then it would be an act of negligence on their part.

On page 684, is a matter to which I perhaps should have referred before going to the charge. The record discloses these facts; quoting:

"Mr. Young—I will say to Mr. Andrews and to the court, as far as I can, I will have an engine arranged and the track arranged in the way Mr. Andrews claims, and then I will have it arranged the way I claim, that the jury may see the experiment.

"Mr. Andrews—I object to it; I think the conditions that vary all through are of such a character that any view of that kind in my judgment would be more liable to mislead one way or the other than it would be to offer any assistance in this case. I don't think that there can be any great difficulty in our arriving at correct results from the sworn testimony of witnesses.

"Court—As I understand the rule of law, there is no doubt but that such an experiment, in the presence of the jury could only be had upon the agreement of counsel upon both sides, and in the absence of such an agreement I would not feel at liberty to order. I will say this, however, as I have heretofore said, that if any one juror makes a request of the court before the argument to have another view of the premises, I will order the jury conducted in charge of the sheriff to have a second view of the premises, and that will be, as I have said before, with the consent and approval of counsel on both sides of this case.

"Mr. Young—I offer to have Mr. Laylin go out and measure distances and have an engine run at varying rates of speed; then I am willing to have these people who have estimated speed say how fast it is running and we can tell to a mathematical certainty how fast it does run.

"Court—Unless counsel agree on both sides to such an experiment, the court will overrule the request.

"Mr. Andrews—I object to it.

"Mr. Young—To the refusal of the court to permit the jury to go, under the circumstances in the evening, to witness an experiment of this kind, I desire to take exceptions."

Whether the trial judge had reference to a dictum in 60 Ohio State or not, I do not know. There is a dictum there which expresses the views of Judge Williams upon this point, and possibly the view of the supreme judges generally who have

the case under consideration.  It is nothing but a dictum, however, and can be treated as the view only of the judge who uses the language.  The case is that of *Schweinfurth* v. *Railway*, 60 Ohio St., 215.  The precise language to which reference is made is found on page 229, where the judge says:

"True, the experiments in this case were not made in court; it was impracticable to do so.  Nor, without the consent of the parties, could they have been ordered to be made elsewhere. But they were made out of court at the request of the defendant, in pursuance of an order procured by it, and under conditions which, to its satisfaction, constituted a sufficiently accurate representation of the occurrence that resulted in the death of the plaintiff's intestate; and they were necessarily of the same probative character as if made in open court."

That was a matter which the court was considering; whether the experiments were to be received and considered as evidence or not, as has sometimes been held with regard to the view of premises, something to throw light upon the evidence as illustrating the case, and not to be deemed substantive evidence in itself.

*Jones* v. *State*, 51 Ohio St., 331, was a homicide case in which we find that certain experiments were made out of the view of the court.  The Supreme Court held that they were authorized by the defendant, and that although the permitting them was alleged to be prejudicial error, it was not so in view of the consent of the defendant.  The court substantially held that it was a matter which he might waive—I mean his right to object to such experiments.

In 2 Jones, Evidence, Sec. 410, we find this language, after discussing the question as to the viewing of premises and also as to experiments:

"And in general it is held to be error to allow the admission of statements or the performance of experiments during the view, unless such experiments or evidence are performed or given with the consent of both parties."

This is stated as a general rule, but whether the trial judge in this case relied upon that, or whether he was relying upon the dictum to which reference was made in *Schweinfurth* v.

*Railway, supra,* I know not. In Jones, Evidence, Sec. 413, this is said:

"They have no right to gain knowledge [speaking of the jurors] concerning the cause by such methods as making experiments out of court or by taking views, except under the supervision of the court. But if the knowledge gained in this way could not have affected the verdict rendered, it is not such error as to warrant setting aside the verdict."

This refers to the situation where the jury go and make experiments of their own volition. But a part of this offer as to experiments was, that the engineer might make measurements. There surely would have been no objection to his making measurements and testifying in regard to that; but that was not precisely what was sought here. It was to make measurements, and after they had been obtained, to have an engine run at varying rates of speed, and have the witnesses who made estimates in court make them over again upon such subsequent transaction.

Our view is, without discussing the matter more fully, that this would have been improper. At the most we are very clear that the court, if it had the power to grant the permission at all against the objection of a party, would have a discretion in the matter to refuse it, if in his judgment it would not throw proper light upon the controversy. Taking that view of it, it can hardly be said there was here an abuse of discretion.

Returning to the charge on page 773 we find request No. 8 of the plaintiff below, and the instruction given in accordance with the request. It reads as follows:

"It is for the jury to say from the evidence and the instructions of the court, whether a person approaching said crossing under the circumstances disclosed by the evidence should, in the exercise of ordinary care, look for an approaching engine, and what looking and listening, ordinary care, under the circumstances disclosed by the evidence, required."

This instruction is not, to our minds, very artistically framed. It is a little obscure at first reading, but the intent of it is clear enough after careful scrutiny, and possibly the court might have been at fault in refusing it. This is not saying

that it was not the duty of a person approaching the track to exercise his faculties of sight and hearing at a suitable point or at the point where, if he had exercised his faculties, it would have disclosed the approaching engine; it is not ·negativing any such proposition as that and taking that to be the law— that a man should make efficient observation, if possible, and at the proper point for making it—it still becomes a question of fact for the jury, as to just what that efficient point is, as to just where, if he had looked, he would have seen, or just where, if he had listened, he would have heard.   This is a matter of fact for the jury to determine, and not for the court.

After the argument was concluded, a request was made to the court as shown on page 797; this was also after the general charge of the court to the jury.   It is recorded as follows:

"Gentlemen of the Jury: I am asked by counsel for plaintiff to give you this further request which I do:

"'If you find from the evidence that when Mr. Newman's· horse was upon the track, he discovered the engine and then urged his horse forward, this fact would not be an act of negligence on the part of Samuel F. Newman, if he acted with ordinary care under the circumstances.'"

We are unable to see why this is not the law.   If he had lingered on the track after discovering the approaching engine; if he ha dmade no effort to escape; if he had stopped upon the track, or if he had permitted his horse to go so slowly as to increase his peril, it might well be urged that that would have been negligence on his part.   The court says that it would not be negligent for him to urge his horse forward provided he acted with ordinary care under the circumstances. We see no reason why the court might not have given it if asked by counsel without that last qualification.   We think it might be said as matter of law that if a man has reached the track and his horse is upon it, if he sees a locomotive so so close to him that he is in great peril, it is his duty to urge his horse forward and get off the track just as soon as possible. The court would be just as much justified in giving that in behalf of the plaintiff as in giving the proposition that before going upon the track, ordinary care required that a man must

exercise his faculties to discover whether there is a sign of danger.

There are numerous other questions raised in this record, numerous exceptions taken, but I do not deem it profitable to examine further, or to say anything about them beyond the statement that in our judgment the case was fairly tried by the court, and with a great deal of care. It would be strange indeed if, in the raising of questions and the taking of exceptions to the number of 265 which I find upon this record, the court did not get sometimes pretty close to the line. The case was fairly tried, ably prosecuted and ably defended, and no just criticism can be made upon the conduct of the court as to any points which have been called to our attention, either in oral argument or in briefs. The judgment of the court is, that the verdict should stand, and that the judgment of the court below should be affirmed.

*S. M. Young,* for plaintiff in error.

*A. V. Andrews* and *W. R. Pruner,* for defendant in error.